**IN THE CIRCUIT COURT OF**
**THE EIGHTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BREVARD COUNTY, FLORIDA**

Case No: 05-2026-CA-047611-XXCA-BC

DAVID TOM,

Plaintiff

v.

JNZ INSURANCE SERVICES INC,
A Florida Limited Liability Company

AND

ALLSTATE INSURANCE COMPANY,
A Foreign Profit Corporation

Defendant(s)

RACHEL M. SADOFF
2026 SEP -1 P 2:49

## COMPLAINT AND REQUEST FOR JURY TRIAL

1. Plaintiff, DAVID TOM ("Tom"), brings this action under federal law - the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227(c) ("TCPA").

2. This action is also brought under state law - the Florida Telephone Solicitation Act ("FTSA") Fla. Stat. § 501.059 as amended by Senate Bill No. 1120 (effective July 1, 2021).

3. This action is brought against two parties; JNZ INSURANCE SERVICES INC, (a Florida LLC, hereafter "JNZ") and ALLSTATE INSURANCE COMPANY, (a Foreign Corporation, hereafter "ALLSTATE") and alleges based on personal knowledge and information and belief, as follows:

Case # 05-2026-CA-047611-XXCA-BC
Document Page # 2
*41873474*

## INTRODUCTION

4. As the Supreme Court has explained, Americans passionately disagree about many things. The American people are largely united in their disdain for telemarketing calls.

5. The Federal Trade Commission and Federal Communications Commission both receive a staggering number of complaints about telemarketers each year. The States likewise field a constant barrage of complaints.

6. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits telemarketing to cell phones and home phones. Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, 2343 (2020).

7. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227(c), and its implementing regulations, 47 C.F.R § 64.1200 as well as violations of Florida Statutes § 501.059, the Florida Telephone Solicitation Act ("FTSA") as amended by Senate Bill No. 1120 (effective July 1, 2021).

8. This case involves a telemarketing campaign that benefits Defendants despite not having the required consent to contact Plaintiff, despite not having an existing business relationship with Plaintiff, and by Defendants / agents working on behalf of Defendants failing to immediately identify a true first and last name/company name/beneficiary of such marketing in violation of FTSA and using a spoofed name/caller ID information transmittal in violation of FTSA as well as violations of TCPA.

**JURISDICTION & VENUE**

9. This court has subject matter over this action for BOTH Federal and State Claims. Federal claims are pursuant to 47 U.S.C. § 227(c)(5) which reads:

> *(3) PRIVATE RIGHT OF ACTION. —A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State — (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.*

10. This court has jurisdiction over Plaintiff's state law claims under the FTSA. Such claims arise out of the same set of factual allegations as Plaintiff's TCPA claims in this action.

11. With specific regard to federal question claims relating to the Telephone Consumer Protection Act (47 U.S.C. § 227 et seq) – Justice Ginsburg during her service on the U.S. Supreme Court wrote for a unanimous court in *Mims v. Arrow Financial Services, LLC* in 2012 finding that such claims may proceed in state or federal courts as state and federal courts have concurrent jurisdiction in private rights of action.

12. Therefore, this court has jurisdiction over Defendants because this suit arises out of and relates to Defendants having made or caused to be made telephonic sales calls in violation of his Do Not Call request and FTSA due to Defendant's specifically marketing towards a Brevard County, Florida Telephone number which was answered by Plaintiff while physically within Brevard County, Florida, establishing minimum contacts with this state and this jurisdiction.

**PARTIES AND FACTUAL BACKGROUND**

13. At all times material hereto, Plaintiff is a resident of the State of Florida, is and was a resident of Brevard County, Florida.

14. At all times material hereto, parties in this action are located in Florida and abroad. Defendant JNZ is domiciled in Fort Myers, FL and Defendant ALLSTATE is domiciled in Northbrook, IL.

15. Tom maintains a telephone number that has been registered on the Federal Do Not Call Registry ending in 9212 since June 28th 2003, some 23 years prior to the calls

relating to the case at bar. A copy of the National Do Not Call Registry verification is attached hereto and incorporated herein by reference as **Plaintiff's Exhibit "A".**

16. Additionally, Defendant ALLSTATE was informed about illegal telemarketing to Plaintiff on multiple occasions over the years and has requested that such illegal telemarketing stop.

17. As recent as 4-7-2026, Plaintiff received calls from parties identifying as "Allstate" when called and reported such illegal telemarketing to corporate counsel for Allstate, Kevin Westerman on the same day identifying the caller ID and the phone line to which Plaintiff received such illegal telemarketing.

18. A copy of the email to Kevin Westerman, an Allstate corporate attorney is attached hereto and incorporated herein by reference as **Plaintiff's Exhibit "B".**

19. The telemarking at issue was directed to his DNC registered line ending in 9212 after registering the number on Federal DNC as of 2003 and informing Allstate corporate that the number should not be called in April of 2026.

20. Tom is and at all times relevant hereto, was an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of the telephone number that received Defendant's telephonic sales call.

## THEORY OF LIABILITY

21. Plaintiff receives a large quantity of illegally made automated calls from overseas call centers on a daily basis.

22. These calls are pitching insurance of all varieties, roofing, solar panels, erectile dysfunction medication, offers to sell or buy property, mortgage refinancing,

extended auto warranties, and countless other products and services he has no interest whatsoever in purchasing.

23. The purpose of such calls is for the overseas callers to generate viable leads that they sell to companies based in the United States so that both parties may financially benefit.

24. Plaintiff has been called over the years by many parties that fail to identify a true name or company, and when asked for such information the callers hang up or they pass on fictious information as part of their marketing campaign in order to escape liability because their systems inform the caller that they made a call to Plaintiff's DNC registered line and they are trained to disconnect the call.

25. Some of the more sophisticated call centers make calls to numbers registered on the Federal Do Not Call List – and utilize automated systems that disconnect the call as soon as their computer realizes they have potential liability by calling telephone line associated with a known telemarketing litigant.

26. They also terminate the call after attempting to connect the call to their lead buyer, who rejects any inbound lead from a Do Not Call List registered number with the buyer's own internal controls.

27. Because these calls originate overseas, a practice commonly employed within overseas call centers to successfully connect and pitch their scripts is that the outbound calls are made from strategically spoofed/fake phone numbers.

28. This is to say that a call center targeting residents of South Florida would spoof or project their caller ID with a telephone number that began with area code 561, 305, or 954 to emulate a South Florida caller.

29. A call center targeting residents of North Florida would spoof or project their caller ID with a telephone number that began with area code 904, 850 or 448 to emulate a North Florida caller.

30. As Plaintiff lives in the area code served by the 321-area code, and has a phone number with the same area code assigned, an overseas call center spoofed a telephone number beginning with 321 two times on calls made to Plaintiff on 8-13-2026 – first at 252PM bearing the caller ID "WIRELESS CALLER 321-603-2057" and again at 329PM from ""PADILLA MANUEL" 321-600-4036". A third call was made to Plaintiff from "ALLSTATE INS CO" 904-339-8325" shortly after the second call.

31. These three calls form the basis of Plaintiff's complaint, alleging violations of TCPA and FTSA.

32. These calls also begin with the callers utilizing fictitious Americanized names such as Steve, Jeff, or Walter and are subsequently disconnected when a called party asks what their real name is, what their company is, and asks them to affirmatively identify themselves beyond such a pseudonym.

33. Because these calls utilize a spoofed number, a fake name, and active measures to maintain their anoninimity; there is no practical way to definitively identify the party involved with such illegal telemarketing beyond any reasonable doubt or preponderance of the evidence.

34. Said differently, it is often impossible to connect illegal calls to a responsible party.

35. These practices are by nature, unfair and deceptive – as the called party is unable to positively ascertain who they are doing business with, until after they have done business.

36. The old proverb states – "If you can't beat them, join them" and as a direct result of such evasive telemarketing patterns and practices, Plaintiff established a new plan – listening to the sales pitch and feigning interest to see what was being offered, and following who was doing the selling and the transacting.

37. These actions are a direct result of calls made to Plaintiff's Federal DNC registered number which cannot successfully connect to an identifiable, responsible party.

38. Plaintiff is often required to purchase what is presented, or faced with the consequence of being unable to discover the hidden identity of the calling parties.

39. This purchase is used strictly for the purpose of identifying parties involved with/responsible for violations of TCPA and FTSA.

40. The first caller identified themselves as a representative for Allstate, asked questions about Plaintiff's car and home ownership status and did not connect to anyone.

41. The second caller did the same thing and then connected Plaintiff to John Bernier, a licensed insurance salesperson in Florida affiliated with Allstate and within the employ of JNZ.

42. Plaintiff sent a letter/email to JNZ requesting production of their do not call policy, and attempted resolution of these claims and was not successful in resolution or production of the do not call policy, a violation of TCPA.

43. Most telecommunications providers offer its customers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, their default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

44. Plaintiff was greeted enthusiastically by an overseas call center with a rep claiming to be "Mike", "Jeff" or "Steve" or some other implausible foreign accented American style name and they stated they were working with Allstate Insurance and they had new discounted rates on auto insurance and offered to connect Plaintiff to a "senior licensed agent for a no cost no obligation quote on auto insurance".

45. As a condition of the transfer to the licensed agent, the overseas call center read a specific disclaimer/release whereupon they stated that this transfer would override all state and federal telemarketing laws.

46. Businesses cannot make calls or have calls made on their behalf illegally and get permission for the call to have been made after the fact, or while connected to the very same illegal call.

47. After listening to Frédéric Chopin's "Minute Waltz"[1] for not quite a minute, Plaintiff was connected with a "bloop"[2] sound and then introduced by the overseas agent to

[1] For the education of the court – overseas call centers lack innovation and usually are of a cookie cutter design and operation. For purposes of keeping costs down and profits up, operators typically use standardized automatic dialers and call transfer systems which nearly 100% of the time will play Frédéric Chopin's "Minute Waltz" whenever a called party is placed on hold.

[2] See Paragraph 48-50

John Bernier from JMZ for the purposes of quoting an Allstate branded auto insurance quote.

48. The "bloops" and "swoosh" noises are standardized sound effects associated with events/actions within the ecosystem of an automatic/robodialing platform. They are the sounds of overseas call centers using automated dialers called Vicidial or similar to automatically dial numbers and pitch their services.

49. A "bloop" sound is made upon the connection of a party, and a "swoosh" sound is made upon the disconnection.

50. Vicidial is an automated dialing system that utilizes number databases input by the call center operators for their targeted audience, and it is widely used amongst overseas call centers offering telemarketing/cold call/inbound transfer leads.

51. The use of Vicidial or similar automated systems for the selection and dialing of numbers is illegal under FTSA without the express written consent of the called party.

52. Plaintiff discovered that the initial phone number displayed on caller ID of 321-603-2057 was disconnected/out of service when he attempted to call back upon completion of the call.

53. The second call from caller ID 321-600-4036 was also disconnected/out of service.

54. The third call from "ALLSTATE INS CO 904-339-8325" connects back to Defendant JNZ.

55. This raises an interesting question – how is a telephone number disconnected and out of service, if it is being used to call people, just moments before?

56. The only logical answer is that these calls were made to Plaintiff and driven by an automated dialing system that generated a spoofed caller ID/false originating number in violation of FTSA.

57. Under FTSA to be compliant, a Company has to transmit the "originating telephone number," – which would be impossible given the fact that the number was disconnected for callback purposes.

58. Additionally, a company has to transmit "the name of the telephone solicitor" or "the name of the seller on behalf of which a telephonic sales call is placed."

59. In this case, "WIRELESS CALLER" 321-603-2057" or "PADILLA MANUEL" 321-600-4036" contain the name of the telephone solicitor, or the name of the seller, or any other useful information. Worthy of note, the call directly made from JNZ – "ALLSTATE INS CO" 904-339-8325" bore an accurate caller ID with name and number, and worked when Plaintiff called it back.

60. Also, a requirement under FTSA, the telephone number displayed "must be capable of receiving telephone calls" and "must connect… to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed."

61. FTSA requires that the displayed phone number must "connect" to somebody—either the marketer or a seller. In this case, the displayed number connects to neither.

62. Plaintiff requested that Defendants name their third-party lead generation provider so that an investigation could be conducted.

63. Defendants provided no such further response to Plaintiff's questions, no results of an investigation, and no useful information.

64. Plaintiff wasted time and energy trying to chase down and identify this mystery lead vendor.

65. The calls made to Plaintiff by the lead vendor hired by Defendants are noncompliant with multiple provisions of FTSA - Fla. Stat. § 501.059 with regard to the display of accurate caller ID information, true first and last name disclosures, business name disclosure, callback capabilities, use of automated dialing systems et al.

66. Each Defendant financially benefits from this illegal telemarketing campaign when auto insurance coverage is bound, a called party pays Allstate a premium for auto insurance the insurance carrier pays the brokerage a commission for setting up the policy, and the subsequent sales agent receives a commission for same from the brokerage.

67. Said differently, all parties share the fruits of an illegal telemarketing campaign.

68. Defendant JNZ is liable for these violative actions of their call center / marketing partner under the following theories of vicarious liability, actual authority, apparent authority or ratification.

69. Defendant Allstate is liable for these violative actions of their independent agents and brokers under the following theories of vicarious liability, actual authority, apparent authority or ratification.

70. Defendants and their marketer/lead generation party are, and at all times relevant hereto meet the definition of a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

71. Defendant JNZ bought a lead/transfer - from a third party, and in doing so bought the liability attached to such a lead.

72. Defendant Allstate was placed on notice of Plaintiff's telephone number ending in 9212 being subjected to illegal telemarketing by Allstate or Allstate agents in April of 2026, and failed to prevent further calls to Plaintiff.

73. Calls made to Plaintiff's DNC telephone line without his consent incur liability.

74. Plaintiff requests the option to amend this complaint to include additional requests for damages, injunctive relief, and any other such relief as may be allowable under law if more violations of law are identified in the discovery phase of this action.

75. Additionally, Defendant JNZ by their own written admission in an email to Plaintiff dated 8-17-2026 state that they hired a lead vendor to provide live transfers. Such correspondence is attached hereto and incorporated herein by reference as **Plaintiff's Exhibit "C".**

76. Due to the inability to affirmatively identify the overseas call center/marketing company that sold Defendant such a lead and Defendant's unwillingness to disclose such information and resolve this matter, Plaintiff is left with no choice but to resolve these issues through litigation and seeks damages as follows:

**COUNT I – FEDERAL TCPA DNC VIOLATIONS**

77. Plaintiff re-alleges and re-adopts paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. The foregoing actions of each Defendant constitute illegal action against Plaintiff in violation of TCPA/Internal DNC. Plaintiff was called on his Federal DNC registered line to pitch Allstate branded auto insurance.

79. Plaintiff was injured by actions of Defendants, jointly and severally.

80. Plaintiff is entitled to relief as a result of each Defendant's actions.

81. **WHEREFORE,** Plaintiff requests:

a. Compensatory damages allowable at law from EACH Defendant, in the amount of $500 for three calls to Plaintiff's DNC line;

b. A finding that such telemarketing campaign was conducted with knowing and willful knowledge of Plaintiff's 20+ year establishment of his numbers on the Federal DNC registry and warrant a finding favoring treble damages in the amount of $1,500 per call against EACH Defendant;

c. Compensatory damages allowable at law from EACH Defendant, in the amount of $500 for failure to produce DNC policy;

d. A finding that such failure to produce DNC policy is a willful and knowing violation of TCPA warranting damages in the amount of $1,500 against EACH Defendant;

e. Prejudgment interest on all monetary recovery obtained;

f. All filing costs and attorney's fees incurred in prosecuting these claims; and

g. For such further relief as the Court deems just and equitable.

Defendant JNZ; Total Damages, Count I: $6,000.00

Defendant Allstate; Total Damages, Count I: $6,000.00

Total Damages Count I: $12,000

## COUNT II – FEDERAL TCPA CALLER ID VIOLATIONS

82. Plaintiff re-alleges and re-adopts paragraphs 1 through 76 of this Complaint as if fully set forth herein.

83. The foregoing actions of each Defendant constitute illegal action against Plaintiff in violation of TCPA (47 U.S.C. § 227).

84. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

85. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

86. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, and without the provision of accurate caller ID name.

87. These violations were willful or knowing.

88. Plaintiff was injured due to Defendant's failure to transmit true and correct caller ID.

89. Plaintiff is entitled to relief as a result of each Defendant's actions.

90. **WHEREFORE,** Plaintiff requests:

a. Compensatory damages allowable at law from EACH Defendant, in the amount of $500 for each call failing to transmit true and correct Caller ID information, on two calls;

b. A finding that such telemarketing campaign was conducted with knowing and willful knowledge of state and federal caller ID requirements and warrant a finding favoring treble damages in the amount of $1,500 for EACH Defendant, on two calls;

c. Prejudgment interest on all monetary recovery obtained;

d. All filing costs and attorney's fees incurred in prosecuting these claims; and

e. For such further relief as the Court deems just and equitable.

Defendant JNZ; Total Damages, Count II: $3,000.00

Defendant Allstate; Total Damages, Count II: $3,000.00

Total Damages Count II: $6,000

## COUNT III - FTSA VIOLATIONS

91. Plaintiff re-alleges and re-adopts paragraphs 1 through 76 of this Complaint as if fully set forth herein.

92. The foregoing actions of Defendants constitute illegal action against Plaintiff in violation of FTSA. Tom as of July 1, 2021, is protected under the laws of the FTSA.

93. Plaintiff was injured due to Defendants violations of FTSA.

94. Plaintiff is entitled to relief as a result of Defendants actions.

95. **WHEREFORE,** Plaintiff requests:

a. Compensatory damages allowable at law from Defendant, in the amount of $500 against EACH Defendant for violation of each element of FTSA;

b. A finding that at Defendant's telemarking campaign – are violative of FTSA in that Plaintiff was called via an automated system from an overseas call center, utilizing fake caller names, fake business names, falsified caller ID number, falsified caller ID name, and utilizing a number that fails to have callback capabilities; at $500 per violation – on the two calls, and treble damages for knowing and willful violations of FTSA, on the two calls – (6 violations per call = $3,000, trebled for knowing and willful violations -= $9,000 per call) totaling $18,000 against each Defendant.

c. Prejudgment interest on all monetary recovery obtained;

d. All filing costs and attorney's fees incurred in prosecuting these claims; an

e. For such further relief as the Court deems just and equitable.

Defendant JNZ; Total Damages, Count III: $18,000.00

Defendant Allstate; Total Damages, Count III: $18,000.00

Total Damages Count III: $36,000

**SUMMARY**

96. Plaintiff hereby requests monetary damages from Defendants jointly and severally as follows:

TCPA Claims, $18,000

FTSA Claims, $36,000

Total Damages Claimed: $54,000

## REQUEST FOR A JURY TRIAL

97. Plaintiff hereby requests a jury trial on all issues so triable.

Dated: 3/31/26,

Respectfully Submitted,

David Tom

For Plaintiff, David Tom - Pro Se
1058 Herne Ave
Palm Bay, Florida 32907
321-725-9212
david.m.tom@gmail.com

Gmail

David Tom <david.m.tom@gmail.com>

---

## National Do Not Call Registry - Your Registration Is Confirmed

---

**Verify@donotcall.gov** <Verify@donotcall.gov>
To: david.m.tom@gmail.com

Sun, Jul 24, 2022 at 10:15 PM

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 9212 on June 28, 2003. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

****************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

PLAINTIFF'S EXHIBIT
"A"

Gmail

David Tom <david.m.tom@gmail.com>

## Just got another telemarketing call from Allstate

**David Tom** <david.m.tom@gmail.com> Tue, Apr 7, 2026 at 10:35 AM
To: "Westerman, Kevin (He/Him)" <kevin.westerman@allstate.com>

I was called at my residence 321-725-9212 at 921AM from "UNAVAILABLE" 954-894-4713 and they tried to connect me to a licensed allstate agent, then dumped the call once they reaslized I was on DNC.

This is getting out of hand, can we agree?

PLAINTIFF'S EXHIBIT "B"

Gmail

David Tom <david.m.tom@gmail.com>

## Your insurance proposal: please review and confirm

**WRIGHT, AUSTIN** <austinwright1@allstate.com>
To: "david.m.tom@gmail.com" <david.m.tom@gmail.com>
Cc: "O'Connor, Richard" <roconnor2@allstate.com>

Mon, Aug 17, 2026 at 12:05 PM

Good afternoon,

We received your correspondence and are reviewing the calls you referenced. We've made sure your number is on our internal do not call list and are looking into the matter with our third-party lead provider. We'll follow up once we've completed our review.

Thank you,



**Austin Wright**
Marketing & Logistics Manager
Richard O'Connor's Allstate Agency
T: (904) 497-1060 F: (866) 573-3191
1631 Race Track Rd, Ste 206
Saint Johns, FL 32259

Allstate you're in good hands®

My Website My Account Allstate Mobile

Click HERE For A FREE Quote!

CLICK TO REVIEW ME ON Google

REFER A FRIEND AND EARN $20! CLICK HERE

PLAINTIFF'S EXHIBIT
"C"

**From:** David Tom <david.m.tom@gmail.com>
**Sent:** Thursday, 13 August 2026 17:32:21
**To:** O'Connor, Richard <roconnor2@allstate.com>; BERNIER, JOHN <johnbernier1@allstate.com>
**Subject:** [EXTERNAL] Fwd: Your insurance proposal: please review and confirm

You don't often get email from david.m.tom@gmail.com. Learn why this is important

[Quoted text hidden]